Good morning to the court. My name is Anthony Ripley. I represent the appellant, Hakop Gambaryan. The relief I'm seeking is for this court to remand for resentencing for Judge Wright, our trial judge. I believe the court's going to remand anyway because of the government's concession that the two-point enhancement, the million-dollar enhancement, was inappropriately applied. I'd ask the court to, on its remand, to, and I say this respectfully to Judge Wright, to ask Judge Wright to consider his own misgivings about the breadth and the loss, the breadth of the charges and the loss. He expressed those misgivings at the bail hearing. He did. He said it was somehow too late for it to be remedied. Well, but I think, I think, I think given the fact that he said it was too late, but it does show that he had his own doubts about this. Correct. And I think that that should, I think, I know the court will consider that. The, starting at the beginning, just a brief argument, when in a situation like this is a Ninth Circuit statin situation, and I cited that case to the court, when there is a great disparity in a sentence because of uncharged conduct, the court looks to clear and convincing evidence. That's the standard. The judge, Judge Wright, at the sentencing hearing, even though we briefed that issue, I don't think found clear and convincing evidence. He never said it. He didn't articulate it. And I think it's very clear from the record in this case that there wasn't clear and convincing evidence, as Judge Wright seemed to acknowledge, or clearly acknowledged, actually, at the bail hearing when asked for bail on appeal. And that is echoed in the pre-sentence report, and I cited part of it to the court, where the probation officer said they have, and I'm quoting, the probation officer has no way to establish which, if any, of the submissions were legitimate and not part of the fraudulent scheme. So while maybe the figure that the probation officer came up with was in good faith, I don't think it was a reasonable estimate of loss. It's guesswork. It had to be. How are they supposed to prove by clear and convincing evidence which transactions were legitimate and which ones weren't? They can have an evidentiary hearing. And if they can't prove it, then it is, it shouldn't be considered. But the court could, you could, Judge Wright could order an evidentiary hearing. So you would look at each and every invoice that was submitted? No. I don't think they have to do that. Do they have to do? There has to be a, as the probation officer indicated, there has to be, it has to be based on, you don't have to try every case. I'm not asking for that, every claim. But there has to be a reasonable basis for doing it, for considering this amount. The, if I'm right, if I'm right, if our position is right, then the sentence is someplace between probation, it could be as little as probation. The judge, without really any basis, assumed that 100% of the bills were inappropriate. There was just no basis for that. And Judge Wright even said that. So your suggestion is that it be remanded for an evidentiary hearing? You're not objecting to an evidentiary hearing? No, not, of course not. Okay. Not at all. All right. May I ask you, there was a, I have two questions. First, apparently there was a box or boxes of documents that were delivered on the first day of trial. By us. By you. Correct. I gave it to the government. Was it ever, were those boxes ever opened? They never looked at it. And I chose not, tactically, not to call my client and not put on a defense. All right. Maybe we should hear from the government. Pardon me? Maybe we should hear from the government. Yes, Your Honor. Thank you very much. May it please the Court, Ellen Meltzer from the United States, and with me is Ritesh Srivastava, who was one of the trial counsel in the case. The district court in this case correctly determined in sentencing that Mr. Gambarian was responsible for intended losses to Medicare of at least $2.5 million. And despite the district court's apparent misgivings during the bond hearing two months later or three months later, there's no basis to alter the district court's determination as to loss. What was the evidence that supported the $2.5 million calculation? The trial evidence clearly showed that Mr. Gambarian did not obtain prescriptions legally, that doctor's identities and provider numbers were stolen. But that would be, there's a very, correct me if I'm wrong, the difference between getting it over $2.5 million is about what, $45,000? $41,000. $41,000. Yes, Your Honor. My law clerk, who's a mathematician, says that's about eight of these wheelchairs. So it's very, very close to the line and it becomes somewhat important to try and determine what the accurate guideline is. I agree, Your Honor. But we did show... And he also, in his mathematical way, said that that would mean that something like, you have to show that 97% of all the wheelchairs were fraudulent. And I believe that the government did that by overwhelming evidence. In this case, the doctor's identities were stolen. The doctors wrote prescriptions for beneficiaries who clearly did not need them. One of those doctors, Dr. Johnson, testified at trial. Well, that's all true. There was a significant fraudulent scheme, but we're dealing with these guidelines, advisory as they may be, that turn, in this particular case, where a minor error would mean the difference between a much more harsh sentence and a much more lenient sentence. This becomes sort of troubling. Well, Your Honor, this Court held in United States v. Popov in 2014, and Judge B1.1, the amount that a supplier bills to Medicare in a health care fraud case is prima facie evidence of the intended loss amount, if not rebutted. So at that point, the burden shifted to Mr. Gambarian to show any amounts that were legitimate, and he failed to do so. That assumes that they were all fraudulent. Excuse me? That assumes that they were all fraudulent. And so the burden is on him to show what's legitimate. And he said in his objections to the PSR, and it's found at page 11 of the record excerpts that he submitted, that he was prepared to bring in beneficiaries for whom the wheelchairs were medically necessary, and yet he put on no evidence at sentencing that any of the amounts were legitimate. Let me ask you this. There was this box of documents which he said he delivered, box or boxes, I don't know, on the first day of trial. Did you ever look into those documents? Would they be any value in trying to get a more precise amount? Your Honor, there were hundreds of beneficiary files that were missing during the search. In fact, I believe 71 percent of the files that should have been at Colonial pursuant to Medicare regulations were not present. Apparently he brought in some additional files, but there's nothing in those files that could have proven whether or not wheelchairs But he said you never looked at those files. It's my understanding, and I was not trial counseled. It says on the record that they were not examined. Well, that might have, I mean, that's troubling. I'm sympathetic when he didn't keep records. I mean, it may not technically be applicable here. There's a doctrine known as spoliation, that if you destroy records that you know might be useful in a lawsuit, an inference can be drawn that it was not helpful to you. But then I read that he produced a whole box full of documents that you subpoenaed, and you didn't look in the box. Well, Your Honor, the files that were present during the search had been altered. There were photocopied signatures. There were 670 photocopied signatures. There were whiteouts. There were altered dates. There were purported signatures of dead people. When this is a two-day trial and he gives us a box of documents, I don't know what we're supposed to do in a matter of two days. I'm not talking about the trial. Your sentencing doesn't take place immediately upon conviction. And so there was time to look at those documents if there's an issue as to the amount. And probation is basically saying we can't be sure. And you're talking about $41,000 difference between a higher and a lower guideline sentence. You had plenty of time to look at those documents to see whether they were useful to you. Again, Your Honor, but the burden is on him to show which amounts are legitimate, and he did not meet that burden. Is that the law in the Ninth Circuit? I know it's the law in the Fifth Circuit that when it's so extensive, when it's broad and so extensive, and there's evidence of that, that the burden shifts to the defendants. And this court said precisely that in United States v. Popov at page 742, Fed Third 911 at 916, and this is a quote. It's in our brief. In health care fraud cases, the amount billed to an insurer shall constitute prima facie evidence of intended loss for sentencing purposes. If not rebutted, the evidence shall constitute sufficient evidence to establish the intended loss by a preponderance of evidence. However, the parties may introduce additional evidence to support arguments that the billed amount overestimates or understates the defendant's intent. So, yes, Your Honor, that is the law in the circuit. The law is that it constitutes it for the preponderance of evidence, not the clear and convincing evidence. The sentencing guidelines themselves don't say what that standard is, but it's – Well, if it is clear and convincing, then this doesn't help you much, because all it says is if it's not rebutted, the evidence will constitute sufficient evidence to establish the loss by a preponderance of evidence. Your Honor, Judge Wright said during the sentencing proceeding that the government had indeed proved by clear and convincing evidence. In response to defense counsel's arguments that Staton was the standard and that we had approved by clear and convincing evidence, Judge Wright said, and these are quotes, I'm fairly convinced, and that was at Excerpt of Records, page 60, I'm fairly well convinced that certainly over $2.5 million of the $3.3 million that was billed was fraudulent. That's at page 61. He also said, based on what I've seen, the intended loss was greater than $2.5 million. Everything I saw during the course of the trial thoroughly convinced me that that is what is appropriate. And those were all comments in response to defense counsel saying that we had not proved by clear and convincing. So Judge Wright may not have used the magic words, but it's clearly what he was saying. The words could equally be consistent with the preponderance of the evidence. I mean, he's the judge talking off the record. It's not a written opinion in a colloquy at sentencing. Your Honor, those, again, was in response to the argument that we hadn't proved by clear and convincing, so I believe that is what he meant. And even at the bond hearing, where he seemed to be second-guessing his earlier decision, his comments were, I think there was ample and overwhelming evidence that Mr. Gambarian was in the business of defrauding the government clearly. That was at page 116 of the record excerpts, and on the previous page he said ---- I don't think there's any doubt about that, that he was in the business of defrauding the government. He also used the word absolutely complete fraud at page 115 of the record excerpts. That's true also. That doesn't mean that he never engaged in any legitimate sales of these world shares. There was ---- That he was in the business of defrauding the government. That's why he got convicted. Your Honor, everything that the government showed at trial, from the fact that he purchased prescriptions to the fact that all of his home assessments within the files were fraudulent, he failed at home assessments when he never even went into the person's residence, the fact that he purchased serial numbers of wheelchairs. So you're ---- what you're saying is that it's absolutely clear that every single wheelchair that he sold was illegitimate. As the Court recognized, we don't have to come in with 300 beneficiaries. No, I understand that, but ---- We only have ---- The difference of about 8 makes a significant difference in sentencing. I mean, I suspect because I'm cynical, at least with respect to our probation department in the Eastern District, that they came up with this figure of 2.5 plus 41,000 just to get it up to that guideline. No, actually, the probation department in this case asked for a lower enhancement. They asked for the one between 1 and 2.5. So the judge was not just going along with what probation said. As he said, I was present in trial. I'm not suffering from the same disability that they were suffering from. Can I ask you how you're defining legitimate? One that would be medically necessary for the beneficiary. And so how did you prove that they weren't medically necessary? The beneficiaries came in and said that they did not need the wheelchairs. The prescriptions ---- So how many people came in and said that? There were four beneficiaries who testified. But we also showed that there were, as Dr. Johnson testified, that he wrote prescriptions without ever seeing people. He sold them to an intermediary for $250 each. There were 38 of his prescriptions. Dr. Alta Morano ---- The trial counsel? Excuse me? Who were the trial counsel? Our trial counsel. Mr. Srivastava is one of them. The other trial counsel is no longer with the Justice Department. But from Justice, not from the local AUSA's office? We have a health care fraud task force that's located within Los Angeles. They work for Department of Justice in Washington, but they were physically based in Los Angeles. They live here. Okay. I just had a similar case recently involving actually a very identical case. There's a lot of power wheelchair fraud right now. Unless the Court has any additional questions. I thought that the health department cleaned that up. There has been one improvement. Medicare no longer reimburses for the entire cost of the wheelchair all at once. I believe since January of 2011, the amount is now billed over a 13-month period. So some of these companies have been operating for six or eight months, then closing and reopening under another name, and that can't happen anymore where they'll get the entire reimbursement amount. So Medicare has improved the situation. Do you think if there was a remand and you opened up this box, you would be able to do better than the last time? I don't know what's in the box, Your Honor. Again, I was not trial counsel. You could ask him. Assuming the box has not been opened yet. I intend to ask him this question. Thank you, Your Honor. Thank you. Mr. Court has questions. I'm prepared to submit them. Thank you. Thank you. The case is surrogate will be submitted. Next case for oral argument.
judges: Reinhardt, Wardlaw, Korman